**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PRESTON WAYNE WALTERS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-01290** |
| v. | : | |
| | : | **(Judge Kane)** |
| **LAUREL HARRY, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court is the motion for summary judgment filed by Defendants Laurel Harry ("Harry"), Dwayne Davis ("Davis"), and Aaron Shaw ("Shaw") as to pro se Plaintiff Preston Wayne Walters ("Plaintiff")'s claims under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights while incarcerated at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"). Also before the Court is Plaintiff's "Motion to Address/Update" (Doc. No. 128) and "Motion to Address/Make Request" (Doc. No. 132). For the reasons set forth below, the Court will grant the motion for summary judgment and deem withdrawn Plaintiff's "Motion to Address/Update" and "Motion to Address/Make Request."

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff, who is a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Fayette. (Doc. No. 103.) In July 2021, he commenced this action by filing a complaint pursuant to Section 1983 in which he asserted violations of his Eighth and Fourteenth Amendment rights, as well as claims of medical malpractice, based primarily on allegations that he had been denied adequate medical care while incarcerated at SCI Camp Hill in 2019. (Doc. No. 1.) In the complaint, Plaintiff named the following individuals as defendants: Harry, the

"Facility Manager (Superintendent)" at SCI Camp Hill; Beth Herb ("Herb"), the "CHCA –
Medical Director" at SCI Camp Hill; and Dr. David Edwards ("Dr. Edwards"), the "Acting
Medical Director" at SCI Camp Hill.  See (id. at 1, 2–3).  Along with the complaint, Plaintiff also
filed his first motion for the appointment of counsel.  (Doc. No. 3.)

On August 2, 2021, the Court issued an Order directing service of the complaint on
Defendants and denying without prejudice Plaintiff's first motion for the appointment of counsel.
(Doc. Nos. 6, 7.)  Over the next approximately forty-five (45) days, Plaintiff filed numerous
documents which the Court considered as exhibits to his complaint.  (Doc. Nos. 8–13, 16–20,
23–26, 28, 39, 41–42.)  He also filed two motions for appointment of counsel (Doc. Nos. 31, 38),
multiple motions for subpoenas (Doc. Nos. 30, 32–34), a motion for an extension of time to file a
subpoena (Doc. No. 36), and a motion which the Court construed as a motion for an extension of
time to file a certificate of merit as to his medical malpractice claims in accordance with
Pennsylvania Rule of Civil Procedure 1042.3 (Doc. No. 29).  On September 15, 2021, the Court
entered an Order which: (1) denied Plaintiff's motions for subpoenas, (2) granted Plaintiff's
motion for an extension of time to file a certificate of merit, (3) extended the time for Plaintiff to
file a certificate of merit for sixty (60) days, (4) conditionally granted Plaintiff's motions for
appointment of counsel, (5) deferred referring the case to the Federal Bar Association's Pro Bono
Committee until responsive pleadings were filed, and (6) directed Plaintiff to refrain from filing
any more submissions in this matter, except for a certificate of merit and responses to any
motions that Defendants might file.  (Doc. No. 40.)

In early October 2021, Harry and Herb filed a motion to dismiss the complaint (Doc.
Nos. 43, 44), and Dr. Edwards separately filed his own motion to dismiss (Doc. No. 44).  On
October 11, 2021, Plaintiff filed a combined brief in opposition to those motions, along with a

motion to amend, which purported to be his proposed amended complaint.  (Doc. Nos. 46, 47.)

In an Order dated October 18, 2021, the Court granted Plaintiff's motion to amend and denied as

moot Defendants' motions to dismiss.  (Doc. No. 48.)  The Court also directed the Clerk of Court

to docket Plaintiff's amended complaint (Doc. No. 46) as a separate docket entry in this matter

(Doc. No. 48).  The amended complaint once again named Harry, Herb, and Dr. Edwards as

Defendants.  (Doc. No. 49.)

On October 29, 2021, Defendants separately filed motions to dismiss the amended

complaint.  (Doc. Nos. 51, 54).  In response to these motions, Plaintiff filed another motion to

appoint counsel (Doc. No. 55) as well as a combined motion to exceed word limit and to amend

his amended complaint (Doc. No. 59).  Regarding his request to amend, Plaintiff sought to add

an Eighth Amendment claim against Justin Rutherford ("Rutherford"), a physician's assistant at

SCI Camp Hill.  (Id. at 1–2.)

In an Order dated December 6, 2021, the Court denied, as unnecessary, Plaintiff's request

to exceed the word limit, because he had not filed a brief that exceeded the five-thousand (5,000)

word limit set forth in the Court's Local Rules.  (Doc. No. 61 at 2 (citing M.D. Pa. L.R.

7.8(b)(2)).)  The Court also granted Plaintiff's request to amend his amended complaint, and the

Court directed him to file a complete second amended complaint within thirty (30) days.  (Doc.

No. 61 at 3.)  The Court further held in abeyance Defendants' motions to dismiss the amended

complaint and explained that, if Plaintiff did not file a second amended complaint, this action

would proceed on his amended complaint, and the Court would consider Defendants' motions at

that time.  (Doc. No. 61 at 3–4.)

On December 11, 2021, Plaintiff timely filed a second amended complaint in which he

asserted claims under Section 1983 for violations of his Eighth and Fourteenth Amendment

3

rights, based primarily on allegations that he was denied and delayed adequate medical care while incarcerated at SCI Camp Hill.  (Doc. No. 64.)  Although Plaintiff sought leave to amend so he could add an Eighth Amendment claim against Rutherford (Doc. No. 59 at 1–2), he did not name Rutherford as a Defendant in the second amended complaint (Doc. No. 64).  Instead, he once again named Harry and Herb as Defendants, along with several new Defendants: Davis, a "Kitchen Supervisor" at SCI Camp Hill; Shaw, a "Kitchen Line Instructor" at SCI Camp Hill; and the "Medical Department" at SCI Camp Hill ("Medical Department") (collectively, "Defendants").[1]  See (id. at 1–3).  The second amended complaint also no longer listed Dr. Edwards as a Defendant.[2]  (Id.)

On March 4, 2022, the Court directed the Clerk of Court to serve a copy of the second amended complaint on the newly named Defendants—i.e., Davis, Show, and the Medical Department.  (Doc. No. 69.)  In the interest of judicial economy, the Court requested that they waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  (Id.)

Davis, Show, and Medical Department waived service (Doc. No. 72) and, thereafter, all Defendants filed a motion to dismiss the second amended complaint and a supporting brief on May 4, 2022 (Doc. Nos. 75, 76).  Two (2) days later, the Clerk of Court docketed an envelope from Plaintiff containing: (1) copies of grievance-related documents (Doc. No. 77 at 1–10); (2) copies of numerous Inmate's Request to Staff Member forms and correspondence with the prison law library (id. at 11–55); (3) portions of what appear to be a legal article (id. at 56–57, 66–87); (4) a June 21, 2021 per curiam Order from the Pennsylvania Supreme Court (id. at 58); (5) an

---

[1]  At the time he filed the second amended complaint, Plaintiff identified Davis by only his last name, and he identified Shaw as "Aaron Show."  (Doc. No. 64 at 1, 3.)

[2]  Because Plaintiff did not name Dr. Edwards as a Defendant in the second amended complaint, the Clerk of Court terminated him as a Defendant on December 28, 2021.

apparent letter from Plaintiff to an unidentified recipient (id. at 59–63); and (6) two (2) pages of

a copy of a motion for appointment of counsel in a different matter (id. at 64–65).  Plaintiff then

filed an unauthorized "Amendment to Amended Complaint with Corrections and Clarity" and a

letter in which he inquired as to whether his "Newly [sic] filed Ammended [sic] Complaint was

accepted," which the Clerk of Court docketed on July 13, 2022, and September 1, 2022,

respectively.  See (Doc. Nos. 81, 82).  Due to these filings, the Court issued an Order on

September 12, 2022, which informed Plaintiff that his purported amended pleading was improper

under the Federal Rules of Civil Procedure and gave him an extension until September 26, 2022,

to file a response to the motion to dismiss his second amended complaint.  (Doc. No. 84.)

On October 24, 2022, after requesting and receiving an additional extension of time from

the Court (Doc. Nos. 86–88), Plaintiff filed a brief in opposition to the motion to dismiss (Doc.

No. 91).  On November 14, 2022, Defendants filed a reply brief in support of their motion.

(Doc. No. 92.)  Thereafter, on January 20, 2023, the Court issued a Memorandum and Order

partially granting the motion to dismiss.  (Doc. Nos. 95, 96.)  The Court granted the motion

insofar as Defendants sought dismissal of Plaintiff's claims against the Medical Department and

Herb, dismissed those claims, and directed the Court of Clerk to terminate those Defendants on

the docket in this case.  (Doc. No. 96 at 1.)  However, the Court denied the motion in all other

respects and permitted Plaintiff to proceed on his Eighth Amendment claims against Davis,

Shaw, and Harry, and on his Fourteenth Amendment claims against Harry.  (Id.)  In addition, the

Court granted Plaintiff a final opportunity to amend his pleading by filing a third amended

complaint within thirty (30) days.  (Id.)

On February 2, 2023, Plaintiff timely filed a third amended complaint in which he again

asserted Section 1983 claims alleging violations of his Eighth and Fourteenth Amendment rights

based on allegations that he was denied and delayed adequate medical care after suffering a fall while he was incarcerated at SCI Camp Hill.  (Doc. No. 97.)  Plaintiff named Harry, Davis, Shaw, Rutherford, and Dr. Edwards as Defendants.[3]  On February 23, 2023, Harry, Davis, and Shaw filed an answer and affirmative defenses to the third amended complaint.  (Doc. No. 98.)  The Court then entered an Order on February 27, 2023, directing the parties to complete discovery by August 28, 2023, and to file any dispositive motions on or before October 26, 2023.  (Doc. No. 99.)

On March 24, 2023, attorneys Gary Schafkopf, Matthew B. Weisberg, and David A. Berlin, entered their appearances on behalf of Plaintiff.  (Doc. Nos. 100–102.)  Then, on August 18, 2023, Plaintiff filed an unopposed motion for an extension of time to complete discovery (Doc. No. 104), which the Court granted and extended discovery for a period of ninety (90) days (Doc. No. 105).

On December 7, 2023, Plaintiff moved to amend his complaint for a fourth time and attached a proposed fourth amended complaint to the motion.  (Doc. No. 108.)  However, after Defendants filed a brief in opposition to the motion to amend on December 18, 2023 (Doc. No. 110),[4] Plaintiff filed a notice that he was withdrawing the motion (Doc. No. 111).  In an Order

---

[3]  In the third amended complaint, Plaintiff identified Davis as "Dwayne Davis" and changed the spelling of Show's last name to "Shaw."  (Doc. No. 97 at 1.)  In addition, Plaintiff referred to Rutherford as "Justin Rudaford."  Since the medical records in this case (as discussed infra) indicate that this Defendant's name is actually Timothy Rutherford (Doc. No. 114-1), the Court will continue to refer to him as "Rutherford."  The Court notes, however, that despite his inclusion in the third amended complaint, Rutherford is not represented alongside the other Defendants, and neither is Dr. Edwards.  See (Doc. No. 98 at 1 n.1 ("Plaintiff also asserts claims against individuals identified as Justin Rudaford and David Edwards, neither of whom are represented by undersigned counsel.")).

[4]  The opposition brief stated that all other prior Defendants had been terminated from this action.  (Doc. No. 110 at 1 n.1.)

dated December 28, 2023, the Court deemed Plaintiff's notice as a motion to withdraw his motion to amend, granted the motion, and deemed the motion to amend as withdrawn.  (Doc. No. 112.)

On January 24, 2024, Harry, Davis, and Shaw ("Moving Defendants") filed the instant motion for summary judgment, a supporting brief, and a statement of material facts, along with several exhibits.  (Doc. Nos. 113–115.)  Two (2) days later, Plaintiff's counsel moved to withdraw as his counsel, and Plaintiff moved to proceed pro se.  (Doc. Nos. 116, 117.)  On January 29, 2024, the Court entered an Order granting Plaintiff's counsel's motion to withdraw and Plaintiff's motion to proceed pro se.  (Doc. No. 118.)  Additionally, the Court directed Plaintiff to respond to the motion for summary judgment on or before April 29, 2024.  (Id.)

Before responding to the motion for summary judgment, Plaintiff filed a "Motion to Take Leave to File a (4th) [sic] Amended, w/ [sic] Clarity, Complaint" in late March 2024.  See (Doc. No. 123).  He also filed two (2) motions seeking to have the Court enter Orders requiring his prior counsel to supply him with documents pertaining to his case that were allegedly in their possession.  (Doc. Nos. 124, 125.)  Then, on May 2, 2024, the Clerk of Court docketed two (2) filings from Plaintiff: (1) a "Motion to Address/Update" in which he appeared to request that the Court stay this case until he finished prosecuting an appeal relating to the criminal case which resulted in his incarceration approximately ten (10) years ago, see (Doc. No. 128); and (2) his brief in opposition to the motion for summary judgment (Doc. No. 129).  Moving Defendants then filed a reply brief in support of their motion for summary judgment on May 10, 2024.  (Doc. No. 130.)  On June 7, 2024, the Clerk of Court docketed two (2) additional filings from Plaintiff: (1) an unauthorized response to the reply brief (Doc. No. 131); and (2) a "Motion to

Address/Make Request of the Honorable Court," in which he requested leave to file yet another amended complaint (Doc. No. 132).[5]

## B.    Factual Background

In accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment.  (Doc. No. 115.)  Plaintiff did not file a counter statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement, as required by the Court's Local Rules.  Thus, Defendants' facts are deemed admitted because:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial."  477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 13-cv-00387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015) (emphasis in original) (citation omitted), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished).  Thus, the undisputed material facts are derived from Defendants' statement.  The Court recounts the relevant facts from this statement below.

### 1.    Plaintiff's Alleged Fall in July 2019

Plaintiff avers that on July 23, 2019, he was working in the kitchen at SCI Camp Hill when he fell and sustained injuries.  (Doc. No. 115 ¶ 6.)  Plaintiff alleges that due to the fall, his left hip was in severe pain and there was a huge bloody gash on the back of his head.  (Id. ¶ 7.)

---

[5]  Because the Court's Local Rules required Plaintiff to first obtain leave of court before submitting a sur-reply brief, see M.D. Pa. L.R. 7.7, the Court will direct the Clerk of Court to strike Plaintiff's response to the reply brief.

Plaintiff claims that after he fell, he immediately reported the incident to the kitchen line instructor, Shaw, and asked to go to medical.  (Id. ¶ 8.)  According to Plaintiff, neither Shaw nor the Kitchen Supervisor, Davis, permitted him to go to medical.  (Id. ¶ 9.)

Plaintiff also avers that following his fall, he wrote a slip to the facility manager, Harry, in which he described his fall in the kitchen, his injuries, and his interactions with Shaw and Davis.  (Id. ¶ 13.)  Despite his requests for help, Plaintiff asserts that Harry never responded.  (Id. ¶ 14.)

Three (3) days after Plaintiff's alleged fall, he was seen by SCI Camp Hill's medical staff.  (Id. ¶ 10; Doc. No. 114-1.)  Records from the medical visit indicate that Rutherford saw Plaintiff for "ongoing chronic pain."  See (Doc. Nos. 114-1, 115 ¶ 11).  The medical records further indicate that, during the medical visit, Rutherford assessed that Plaintiff had lower back and hip pain.  (Doc. No. 114-1.)  Plaintiff and Rutherford also discussed Plaintiff's current and suggested medications.  (Id.; Doc. No. 115 ¶ 11.)  As noted by Defendants, the medical record neither references Plaintiff informing Rutherford that he suffered hip pain from a recent fall, nor that there was a bleeding gash on the back of his head.  (Doc. No. 115 ¶ 12; Doc. No. 114-1.)

## 2.   The DOC's Inmate Grievance Process

The DOC has a policy, DC-ADM 804, that governs the inmate grievance process.  See (Id. ¶ 15 ("DC-ADM 804 outlines the necessary three-step process of the grievance procedure.")); see also DC-ADM 804, available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited September 25, 2024).  When inmates have a concern, they are expected to submit a grievance within fifteen (15) working days after the event giving rise to their concern.  (Doc. No. 115 ¶ 16; DC-ADM 804 § 1(A)(5), (8).)  Following the submission of a grievance, it is assigned to a staff

member for Initial Review.  (Doc. No. 115 ¶ 17; DC-ADM 804 § 1(C)(3).)  After Initial Review,

the inmate can appeal the response they received to the Facility Manager.  (Doc. No. 115 ¶ 18;

DC-ADM 804 § 2(A)(1)(a).)  After the Facility Manager responds, the inmate can appeal that

response for Final Review to the DOC Secretary's Office of Inmate Grievance and Appeals

("SOIGA").  (Doc. No. 115 ¶ 19; DC-ADM 804 § 2(A)(2), (B)(1).)

### 3. Plaintiff's Grievances Filed in 2019

Plaintiff filed eleven (11) grievances while incarcerated at SCI Camp Hill in 2019.  (Doc.

No. 114-3.)  Of those grievances, none were appealed to SOIGA for Final Review (Doc. Nos.

114-4 at 3; 115 ¶ 21), and "there is no admissible evidence to suggest that Plaintiff filed a

grievance related to the fall and completed the grievance process" (Doc. No. 115 ¶ 23).

## II. LEGAL STANDARD

The Court must render summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See

Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  A disputed fact is "material" if proof of its

existence or nonexistence would affect the outcome of the case under applicable substantive law.

See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  A dispute of

material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  See Anderson, 477 U.S. at 257.  When determining whether there is a

genuine dispute of material fact, the Court must view the facts and all reasonable inferences in

favor of the nonmoving party.  See id. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor.").

To avoid summary judgment, the nonmoving party may not rest on the unsubstantiated allegations of their pleadings.  When the party seeking summary judgment satisfies their burden to demonstrate the absence of a genuine dispute of material fact, the burden of production shifts to the nonmoving party, who must "go beyond the pleadings" with affidavits, "depositions, answers to interrogatories, and the like" to show specific material facts giving rise to a genuine dispute.  See Celotex Corp., 477 U.S. at 324; id. at 328 (White, J., concurring).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).  Instead, they must produce evidence to show the existence of every element essential to their case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp., 477 U.S. at 323; see also Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992) (explaining that since plaintiff had the burden of proof, "he must make a showing sufficient to establish the existence of every element essential to his case" (citations omitted)).

As noted supra, when determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co., 475 U.S. at 588 (citation omitted).  In doing so, the Court must "accept the non-movant's allegations as true and resolve any conflicts in [their] favor."  See White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  However, a party opposing a summary judgment

motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that they are a pro se litigant because these rules apply with equal force to all parties.  See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

Even if the Court deems the facts in the moving party's submission to be admitted due to the nonmoving party's failure to comply with Local Rule 56.1, the Court cannot simply grant the motion for summary judgment as unopposed.  Instead, the Court can only grant the motion if the Court "find[s] that judgment for the moving party is 'appropriate.'"  See Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).  The analysis for determining whether judgment is "appropriate" depends on whether the party moving for summary judgment bears the "burden of proof on the relevant issues":

> Where the moving party has the burden of proof on the relevant issues, this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law.  Where the moving party does not have the burden of proof on the relevant issues, this means that the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law.

See id. (citing Celotex Corp., 477 U.S. 317).

## III.      DISCUSSION

### A.      The Motion for Summary Judgment

Moving Defendants seek summary judgment on the Section 1983 claims asserted against them in the third amended complaint.  Moving Defendants first argue that Plaintiff procedurally defaulted on these claims because he failed to exhaust his available administrative remedies.  (Doc. No. 113 at 1.)  Additionally, Moving Defendants argue that even if the procedural default of Plaintiff's claims was excused, he has offered no evidence to support his claims.  (Id.)  As explained below, the Court agrees with Moving Defendants that Plaintiff has failed to exhaust his Section 1983 claims against them.

### 1.      Exhaustion of Administrative Remedies

#### a.      Exhaustion of Administrative Remedies for Section 1983 Claims

Moving Defendants first contend that they are entitled to summary judgment on the Section 1983 claims asserted against them in the third amended complaint due to Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions.  See Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. 2018); see also Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative

remedies" (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006))); <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); <u>Booth v. Churner</u>, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

> **b.    The PLRA's Requirements for Proper Exhaustion of Administrative Remedies**

The Court turns to the requirements of the PLRA.  "The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  <u>Downey v. Pa. Dep't of Corr.</u>, 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting <u>Woodford</u>, 548 U.S. at 88).  "These applicable procedural rules are supplied by the individual prisons."  <u>Id.</u> (citations omitted); <u>see also</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"); <u>Jones</u>, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim"); <u>Woodford</u>, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").

A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims.  <u>See</u> <u>Spruill</u>, 372 F.3d at 230–32 (concluding that PLRA's exhaustion requirement includes procedural default component); <u>see also</u> <u>Drippe v. Tobelinski</u>, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that <u>Spruill</u> held "that the PLRA includes a procedural

default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures").  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them.  See Rinaldi, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (alterations in original) (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies "is an affirmative defense under the PLRA." See Jones, 549 U.S. at 216.  As such, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d at 268 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to [them]."  See id. (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA, i.e., to "return[] control of the inmate grievance process to prison administrators, encourag[e] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted); Jones, 549 U.S. at 204 (explaining that exhaustion requirement "allows prison officials an opportunity to resolve

15

disputes concerning the exercise of their responsibilities before being haled into court").  It also "reduces any incentive that prison officials otherwise might have to use threats to prevent inmates from exhausting their administrative remedies and thereby safeguards the benefits of the administrative review process for everyone."  See Rinaldi, 904 F.3d at 268 (citation and internal quotation marks omitted).

As explained above, the applicable grievance policy is DC-ADM 804.  (Doc. No. 115 ¶ 15.)  Under DC-ADM 804, the DOC requires every inmate in its custody to "have access to a formal procedure" through which the inmates can "seek resolution of problems or other issues of concern arising during the course of [their] confinement."  See (Doc. No. 114-2 at 2).

The DOC refers to its "formal procedure" as the "Inmate Grievance System," and it is comprised of three (3) separate steps.  See (Id. at 2, 5–24).  The first step requires the inmate to submit a written grievance to the Facility Grievance Coordinator or designee, usually the Superintendent's Assistant, within fifteen (15) working days after the event upon which the grievance is based.  See (Id. at 6).  For the second step, the inmate must appeal an initial review response/rejection to the Facility Manager or designee within fifteen (15) working days from the date of the initial review response/rejection.  See (Id. at 16).  For the third step, if the inmate "is dissatisfied with the disposition of an appeal from the Facility Manager/designee," they must "submit an Inmate Appeal to Final Review" within fifteen (15) working days of the date of the Facility Manager/designee's decision.  See (Id. at 19).

### c.    Analysis

Defendants argue that Plaintiff failed to exhaust available administrative remedies before asserting his Section 1983 claims against them in this case.  After reviewing the undisputed material facts, the Court agrees with Defendants that Plaintiff's Section 1983 claims against them are unexhausted.

The undisputed material facts reveal that in 2019, the year in which Plaintiff alleges the fall occurred, Plaintiff submitted eleven (11) grievances.  (Doc. No. 114-3.)  Of the eleven (11) grievances, seven (7) were filed for a variety of unrelated issues, while the remaining four (4) grievances were filed by Plaintiff as "Health Care" issues.  (Id.)  As discussed supra, under DC-ADM 804, submitting a written grievance is the first step of the DOC's administrative review process.  See (Doc. No. 114-2 at 5).  To complete the administrative review process and avoid a procedural default, Plaintiff would then have to appeal the initial review response/rejection to the Facility Manager, and then finally "submit an Inmate Appeal to Final Review" to SOIGA.  See (Id. at 16–19).  As demonstrated by Moving Defendants, Plaintiff never submitted any of his 2019 grievances to Final Review.  (Doc. No. 114-4 ¶ 7.)  Not only did Plaintiff fail to fully exhaust his administrative remedies, but according to Defendants, none of the grievances related to the alleged fall experienced by Plaintiff on July 23, 2019.  (Doc. No. 115 ¶ 23.)

In his response in opposition to the motion, Plaintiff does not argue that he ever filed a grievance relating to his fall on July 23, 2019.  See generally (Doc. No. 129 at 1–12).  In fact, he appears to concede that he did not file a grievance relating to the incident, much less fully exhausted it.  See (Id. ¶¶ 5–6).  Nevertheless, Plaintiff appears to contend that his failure to exhaust is excused because he filed Inmate Request to Staff Member forms in which he stated that he was injured when he fell on July 23, 2019.  See (Id. ¶ 5 ("Counsel of [sic] defendants FAILS [sic] to understand Record [sic] was made, as stated in no. 2[.]"); id. ¶ 2 ("Plaintiff has previously submitted Multiple [sic] Inmate Request slips, to Multiple [sic] Staff [sic] at S.C.I. CAMP HILL [sic], and the event at issue, was for FACT [sic], made known to Multiple [sic] D.O.C. Staff as ALL N-Block staff, Laurel Harry, Administration and to Sick Call on 7-26-2019.  Records of D.O.C. show what the staff [sic] writing, wants to write, make record [sic].").  He

also appears to contend that the administrative process was unavailable to him because his grievance would just be denied, or the prison would seek a lengthy extension to respond to the grievance.  (Id. ¶ 6.)  Neither of these contentions have merit.

Regarding the submission of Inmate Request to Staff Member forms pertaining to his fall, while it does appear that Plaintiff completed those forms (Doc. No. 129-1 at 1–3),[6] they do not qualify as grievances under the version of DC-ADM 804 which was in effect in July 2019.  More specifically, DC-ADM 804 provides that an Inmate Request to Staff Member form is part of the DOC's initial process which allows an inmate to attempt to informally resolve a concern prior to filing a grievance.  See (Doc. No. 114-2 at 5 ("An inmate is encouraged to attempt resolution of a concern informally by use of a **DC-135A, Inmate Request to Staff Member** or direct conversation with the Unit Manager or Officer-in-Charge prior to submitting a **DC-804, Part 1, Official Inmate Grievance Form (Attachment 1-A)**.").  If the inmate is unable to informally resolve their concern, DC-ADM 804 states that they must then file a formal grievance to have their concern heard.  See (Id. ("When an inmate has a concern that he/she is unable to resolve, the inmate must submit his/her grievance to the Facility Grievance Coordinator/designee using the **DC-804, Part 1**.").  Therefore, presuming that Plaintiff was unable to resolve his concern with his fall on July 23, 2019, through the submission of Inmate Request to Staff Member forms, DC-ADM 804 required him to file a formal grievance, which the record shows that Plaintiff did not do.  Accordingly, because Plaintiff did not complete the administrative review process as to his Section 1983 claims in this case, he never fully exhausted his administrative remedies related to those claims.

---

[6]  As discussed infra, most of his Inmate Request to Staff Member forms are not acknowledged with the signature of any SCI Camp Hill staff member.

As for Plaintiff's second argument, i.e., the unavailability of administrative remedies, the Court previously noted that "[a]n administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" See Downey, 968 F.3d at 305 (alterations in original) (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)). Also, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi, 904 F.3d at 268. In other words, Plaintiff is the one who shoulders the burden of establishing that administrative remedies were unavailable to him or, more specifically here, that there is a genuine issue of material fact as to whether any administrative remedies were unavailable to him.

Plaintiff attempts to demonstrate the unavailability of administrative remedies by arguing that, even if he exhausted the administrative review process, he "still would be denied relief, or rejected due to some policy protecting staff" or the process would be delayed with no end. See (Doc. No. 129 ¶ 6.) Additionally, Plaintiff expresses concerns of retaliation from staff for submitting and appealing grievances. (Doc. No. 129 ¶ 7.) To support these assertions, Plaintiff provides exhibits consisting of grievances and Inmate Request to Staff Member forms he filed in 2022 and some of the corresponding responses from DOC staff members. (Doc. Nos. 129-2, 129-3.) These exhibits do not support Plaintiff's contention that his administrative remedies were unavailable to him in July to August 2019.

The Court first points out that Plaintiff has failed to show that he lacked access to the administrative process following his alleged fall. Rather, the record demonstrates that he had

ample access to file grievances as evidenced by the nine (9) grievances he filed after the date of his alleged fall.  See (Doc. No. 114-3 at 2).  Moreover, to the extent that Plaintiff is attempting to show that the grievance process at SCI Camp Hill was essentially a "simple dead end," see Downey, 968 F.3d at 305, through his attached exhibits, he has failed to do so.

In the first instance, Plaintiff's exhibits are documents he filed at SCI Camp Hill in 2022, so they have no bearing on what the administrative process was like at SCI Camp Hill in 2019.  In other words, Plaintiff has put forward no evidence in the record as to how the administrative process worked, or allegedly did not work, in 2019.  Also, if the process was wholly incapable of providing Plaintiff with relief, as he asserts, he surely would not have filed nine (9) grievances after the date of his alleged fall, in which he presumably was seeking some sort of relief by formally raising his concerns with the prison.

Secondly, almost all the attachments are not grievances; instead, they are copies of Inmate Request to Staff Member forms that Plaintiff purportedly submitted in 2022.  Even if Plaintiff did not receive the relief he sought through the informal Inmate Request to Staff Member forms, those forms do not constitute evidence showing that the formal grievance process was an exercise in futility.  To the contrary, it is entirely possible that filing formal grievances would have permitted Plaintiff to obtain some of his requested relief.

As for Plaintiff's assertion that his administrative remedies were unavailable because he feared retaliation if he filed a grievance, he must show "(1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate."  See Rinaldi, 904 F.3d at 269.  Plaintiff fails to satisfy the first requirement here.

In this regard, Plaintiff has introduced no evidence demonstrating that he received any threat about filing a grievance relating to his alleged fall.  He does not identify any statement or action by a staff member at SCI Camp Hill which would have deterred him from filing a grievance following his alleged fall.  Instead, he references a purported incident in mid-September 2019, when Davis allegedly issued him a misconduct for failing to work even though he was on a "medical lay in" during that time.  See (Doc. No. 129 ¶ 14).  Plaintiff does not explain how this alleged retaliation would have caused him not to file a grievance almost two (2) months beforehand.  Further, the issuance of the alleged misconduct was, as Plaintiff acknowledges, related to Davis's belief (whether accurate or not) that he refused to work, and not because he had filed any grievance.[7]  Overall, Plaintiff does not identify any threat which was "sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance."  See Rinaldi, 904 F.3d at 269.  Accordingly, Plaintiff has essentially asserted a generalized fear of retaliation, which is insufficient to render administrative remedies unavailable to him.[8]

In conclusion, the Court finds that there is no genuine issue of material fact as to whether Plaintiff filed a grievance relating to his alleged fall on July 23, 2019, much less that he fully exhausted the grievance process as required by DC-ADM 804.  There is also no genuine issue of material fact as to whether the grievance process was unavailable to Plaintiff.  The record shows that Plaintiff had access to the grievance process as evidenced by the eleven (11) grievances he

---

[7]  It appears that the misconduct charge was dismissed.  See (Doc. No. 129-1 at 19 (showing Plaintiff acknowledged on October 28, 2019, that Davis's misconduct charge was dismissed, and he was "currently misconduct free")).  Thus, it resulted in no negative consequences to Plaintiff.

[8]  Even if Plaintiff had satisfied the first requirement, he points to no evidence in the record showing that he did not file a grievance relating to his fall in July 2019 because of any actual threat.

21

filed in 2019, including nine (9) grievances he filed after the date of his alleged fall. The record also does not support Plaintiff's conclusory assertions that the administrative process was futile or that he feared retaliation if he filed a grievance. Therefore, the Court will grant Moving Defendants' motion for summary judgment on their argument that Plaintiff failed to exhaust his administrative remedies as to their Section 1983 claims against him in this case.[9]

**B.      Plaintiff's Motions**

Plaintiff also has two pending motions before the Court, his "Motion to Address/Update" (Doc. No. 128) and "Motion to Address/Make Request" (Doc. No. 132). Under Local Rule 7.5, "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion." See M.D. Pa. L.R. 7.5. "If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn." Id.

Here, Plaintiff never filed a brief in support of either motion. In addition, neither the "Motion to Address/Update" nor the "Motion to Address/Make Request" are among the types of motions where a supporting brief need not be filed under the Local Rules. See id. ("A brief shall not be required: (a) In support of a motion for enlargement of time if the reasons for the request are fully stated in the motion, (b) In support of any motion which has concurrence of all parties, and the reasons for the motion and the relief sought are fully stated therein, or (c) In support of a motion for appointment of counsel."). Therefore, because Plaintiff failed to file briefs supporting his motions, the Court deems the motions as withdrawn.[10]

---

[9]  Because the Court has determined that Moving Defendants are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies prior to filing this action, the Court has not addressed their second argument that he failed to introduce any evidence in support of his claims.

[10]  Even if the Court had considered the motions on their merits, the Court would have denied them. In his "Motion to Address/Update," Plaintiff essentially requested that the Court stay this

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Moving Defendants' motion for summary

judgment and deem withdrawn Plaintiff's "Motion to Address/Update" and "Motion to

Address/Make Request."  An appropriate Order follows.


<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

case pending the resolution of an appeal he filed with the Pennsylvania Superior Court relating to
his underlying criminal conviction which presumably resulted in his incarceration at SCI Camp
Hill.  (Doc. No. 128 at 5.)  He also appeared to seek leave to file yet another amended complaint.
(<u>Id.</u> at 6–8.)

Plaintiff provides no plausible reason why a stay would be required here while he has an
appeal pending with the Superior Court in an unrelated criminal matter, especially since this case
has already been pending for a few years.  Moreover, to the extent he was seeking leave to file
another amended complaint, his failure to attach his proposed fourth amended complaint to the
motion warrants its denial.  <u>See Fletcher Harlee Corp. v. Pote Concrete Contractors</u>, 482 F.3d
247, 252 (3d Cir. 2007) (stating that "to request leave to amend a complaint, Plaintiff must
submit a draft amended complaint to the court").

Concerning Plaintiff's "Motion to Address/Make Request," he once again requests leave
to file another complaint.  (Doc. No. 132 at 1–2.)  However, this motion fails for the same reason
as his prior motion seeking leave to amend, <u>i.e.</u>, he failed to attach a proposed amended
complaint to the motion.  <u>See id.</u>